[L.A. No. 30172. In Bank. Feb. 25, 1974.]

FRANK HILL, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, William S. Berland and Seymour Weisberg, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**BURKE, J.**—Frank Hill, who is charged by information with attempted burglary, seeks mandamus to compel respondent court to issue an order directing the People to permit him to examine and copy "the felony conviction record, and the arrest and detention records of Harry Sillence."

The public defender who represents petitioner made a pretrial motion for discovery of the foregoing records. A supporting declaration by the public defender alleged on information and belief that "the Los Angeles Police Department and/or the District Attorney's Office of Los Angeles have in their possession or under their control the past felony conviction, arrest and detention records ('rap sheet') of . . . Sillence" and that Sillence will be called as a prosecution witness at the trial and will testify to substantially the same facts contained in petitioner's arrest report, a copy of which was attached to the declaration and incorporated therein. It appears from that report that Sillence was an eyewitness to the alleged crime.[1] The declaration further alleged that "the . . . felony conviction record . . . [and] the arrest and detention records of [Sillence] are unknown to [petitioner] or his attorney"; that it is necessary that those records be made available to petitioner and his attorney in order that they may properly prepare the case for trial; and that Sillence's felony conviction record "is . . . relevant . . . as it may be used to impeach the witness."

Petitioner's points and authorities filed in respondent court alleged that Sillence's arrest and detention records "may show that he has a bias or motive to lie in the current action. He may have prior arrests . . . for burglary. These incidents may be similar to the current offense . . . . [¶] Such incidents could be used to show that Sillence may be the actual perpetrator of the offense for which [petitioner] is now charged, thus giving him a motive to lie."

At the hearing on the motion the public defender urged that the prosecution had a duty "to obtain" the desired records (apparently from the Bureau of Identification of the Department of Justice (hereafter called the bureau)), thereby indicating there was doubt as to the accuracy of his information regarding the agency that had the records. The prosecutor did

---

[1]The report stated: Sillence, who worked at the same hotel where petitioner resided, saw petitioner place a crowbar under his coat and with one Moss leave the hotel. Sillence followed them to a shop where he saw them unsuccessfully try to pry the lock off the door with the crowbar and then return to the hotel. Police, who were called to the scene, observed fresh pry marks on the door. They found petitioner and Moss in the patio area of the hotel and observed a crowbar against the wall near petitioner.

not take any position as to whether the records, if any, were in his possession or control, nor did he clearly affirm or deny the existence of the records.

The motion was denied by respondent, which stated, "I am denying your motion as to the felony record, if there is one, on the grounds that there is insufficient showing that there may be a felony record . . . . [¶] [A]s to the request for the arrest and detention records, it is not analogous to the situation in *Engstrom* [v. *Superior Court*, 20 Cal.App.3d 240 (97 Cal.Rptr. 484)] . . . ." Petitioner then filed the instant petition for a writ of mandate,[2] and we stayed the proceeding in respondent court pending final determination of this matter.

### The Felony Conviction Record, if Any, of Sillence

■ A motion for discovery by an accused is addressed to the sound discretion of the trial court, which has inherent power to order discovery in the interests of justice. (See *People* v. *Terry,* 57 Cal.2d 538, 560-561 [21 Cal.Rptr. 185, 370 P.2d 985]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 708 [312 P.2d 698]; *Vetter* v. *Superior Court,* 189 Cal.App.2d 132, 134 [10 Cal.Rptr. 890].)[3]

It has been stated that the basis for granting pretrial discovery to a defendant is the fundamental principle that an accused is entitled to a fair trial (see *Cash* v. *Superior Court,* 53 Cal.2d 72, 75 [346 P.2d 407]; *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 707, 709; Louisell/Wally, Modern Cal. Discovery, *supra,* pp. 881-882), and "Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on the issues in the case, and *in particular it has no interest in convicting on the testimony of witnesses who have not been* as rigorously cross-examined and *as thoroughly impeached as the evidence permits.*" (Italics added; *People* v. *Riser,* 47 Cal. 2d 566, 586 [305 P.2d 1]; in accord, *Jones* v. *Superior Court,* 58 Cal.2d 56, 59 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]; *Powell* v. *Superior Court, supra.*)

---

[2]It is undisputed that mandate is the appropriate remedy to enforce an asserted right to pretrial discovery. (See, e.g., *Joe Z.* v. *Superior Court,* 3 Cal.3d 797, 801 [91 Cal. Rptr. 594, 478 P.2d 26]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 705-707 [312 P.2d 698].)

[3]This court has developed rules of criminal discovery in the absence of legislation. (See *Ballard* v. *Superior Court,* 64 Cal.2d 159, 176, fn. 12 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; Louisell/Wally, Modern Cal. Discovery (2d ed.) pp. 847-848.)

■ An accused, however, is not entitled to inspect material as a matter of right without regard to the adverse effects of disclosure and without a prior showing of good cause. "In criminal cases, the trial court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest. (See *People* v. *Lopez,* 60 Cal.2d 223, 246-247 . . . ; *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 707-708.) Additionally, the court has discretion to deny discovery in the absence of a showing which specifies the material sought and furnishes a 'plausible justification' for inspection. (See *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 167; cf. Kaufman, *Criminal Discovery and Inspection of Defendant's Own Statements in the Federal Courts,* 57 Colum.L.Rev. 1113, 1118.)" (See *Joe Z.* v. *Superior Court, supra,* 3 Cal.3d 797, 804.) " 'A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense . . . .* ' (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U. L.Rev. 228, 244; italics added.)" (*Ballard* v. *Superior Court, supra,* at p. 167.)

Petitioner's showing specified the material sought, i.e., Sillence's "felony conviction . . . records ('rap sheet')." Evidence Code section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by *the record of the judgment* that he has been convicted of a felony" unless specified circumstances exist which do not appear to be present here. (Italics added.) Even if a "rap sheet" is not "the record of the judgment," it could provide information that might lead to the discovery of that record.

Respondent's basis for denying the motion for discovery of Sillence's felony conviction record (i.e., that there was an insufficient showing of such a record) lacks merit. ■ It is implicit in *Cash* v. *Superior Court, supra,* 53 Cal.2d 72, that proof of the existence of the item sought is not required. (See also Louisell/Wally, Modern Cal. Discovery, *supra,* pp. 885-886.) A requirement of such proof would, in many cases, deny the accused the benefit of relevant and material evidence. (Cf. *People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428].)

We turn next to whether petitioner could "readily obtain the information through his own efforts." (See *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 167.) The People make no claim that the public defender could have himself obtained the information regarding any felony conviction record

of Sillence directly from the bureau or indirectly through the Attorney General. Penal Code section 11105[4] requires the Attorney General to furnish to specified persons, upon application in accordance with that section, copies of summary criminal history information (commonly called "rap sheets"), but public defenders are not among those specified except in certain circumstances not present here.

We note that section 11105 (see fn. 4) prohibits furnishing such information to persons other than those listed therein "or as provided by law," but that section does not prohibit discovery to an accused of another's criminal record where a showing has been made of a plausible justification for inspection. The People do not argue to the contrary, nor do the People argue that Penal Code section 11076 prohibits such discovery.[5]

The People argue instead that good cause was not shown for inspection of any felony conviction record of Sillence because the defense gave no explanation why the information sought could not be obtained directly from Sillence. In support of their argument the People point to statements in *Joe Z.* v. *Superior Court, supra,* 3 Cal.3d 797, 806,[6] but *Joe Z.* did not

---

[4]Section 11105 provides: "(a) The Attorney General shall furnish, upon application in accordance with the provisions of subdivision (b) of this section, copies of all summary criminal history information pertaining to the identification of any person, such as a plate, photograph, outline picture, description, measurement, or any data about such person of which there is a record in the office of the department.

"(b) Such information shall be furnished to all peace officers, district attorneys, probation officers, and courts of the state, to United States officers or officers of other states, territories, or possessions of the United States, or peace officers of other countries duly authorized by the Attorney General to receive the same, and to any public defender or attorney representing such person in proceedings upon a petition for certificate of rehabilitation and pardon pursuant to Section 4852.08, upon application in writing accompanied by a certificate signed by the peace officer, public defender, or attorney, stating that the information applied for is necessary for the due administration of the laws, and not for the purpose of assisting a private citizen in carrying on his personal interests or in maliciously or uselessly harassing, degrading or humiliating any person.

"(c) Such information shall not be furnished to any persons other than those listed in subdivision (b) of this section or as provided by law; provided, that such information may be furnished to any state agency, officer, or official when needed for the performance of such agency's, officer's, or official's functions.

". . . . . . . . . . . . . . . . ."

[5]Section 11076 provides: "Criminal offender record information shall be disseminated, whether directly or through any intermediary, only to such agencies as are, or may subsequently be, authorized access to such records by statute."

[6]*Joe Z.* stated (at p. 806), "Petitioner makes no showing that pretrial discovery of the statements and conversations of his former codefendants [whom the district attorney did not plan to call as witnesses at petitioner's hearing] are in fact necessary for the preparation of his case, and *he offers no explanation why he could not obtain the factual information contained therein directly from the juveniles themselves.* (Com-

involve a felony conviction record or indicate that it is always necessary for a party seeking discovery to explain why the information sought could not be obtained directly from the person involved.

In our opinion petitioner was not required to give such an explanation. It cannot be assumed that a person will give accurate and complete information regarding any prior felony convictions he may have, and to require the defense to attempt to obtain from a prosecution witness information regarding any such convictions as a prerequisite to seeking discovery of information regarding them could have effects detrimental to the defense since such an attempt could antagonize the witness.

▆▆▆ We conclude that the information sought could not readily have been obtained by petitioner through his own efforts. And it appears reasonable that such information will assist petitioner in preparing his defense. As we have seen, it appears from the showing made in respondent court that Sillence was an eyewitness to the felony charged and so far as appears the only eyewitness other than the persons he claimed perpetrated it, and the corroboration of his report was not strong. Petitioner's showing did not disclose his defense but that was not required. Manifestly it would be of help in preparing the defense to obtain information regarding any prior felony convictions of Sillence, whose credibility was likely to be critical to the outcome of the trial.

Petitioner thus showed good cause for inspection of any felony convictions in the "rap sheet" of Sillence, if it exists.[7] We do not hold that good cause exists in every case in which a defendant charged with a felony seeks discovery of any felony convictions in any "rap sheet" of prosecution witnesses. Support for such a holding might be found in *Engstrom* v. *Superior Court, supra,* 20 Cal.App.3d 240. There the petitioner, who was charged with certain felonies, sought discovery of, inter alia, "The felony conviction records of prosecution witnesses [named in the motion] to impeach their credibility," and the court broadly concluded that "the prosecution should be required, on request, to obtain and make available information concerning felony convictions of prosecution witnesses." Although *Engstrom* did not so state, the court in *Engstrom* may have believed it was apparent from the nature of the material sought, without more, that good

---

pare *Vetter* v. *Superior Court [supra],* 189 Cal.App.2d 132, 136. . . .) Accordingly, petitioner has not established his present right to a writ of mandate with respect to this material." (Italics added.)

[7]The People have set forth a lengthy list of what they believe to be the chief factors in determining whether good cause is shown for the discovery of prior conviction records for impeachment purposes. It is unnecessary here, however, to consider each factor listed, since we are satisfied that petitioner's showing was sufficient to establish good cause for discovery of any felony conviction record of Sillence.

cause existed for discovery of that material. Other authority supports the quoted conclusion of *Engstrom*. (See American Bar Association Project on Minimum Standards of Criminal Justice (approved draft (1970), Discovery and Procedure Before Trial, §§ 2.1, subd. (a), subsec. (vi), and 2.4.)

We do not believe, however, that *Engstrom's* conclusion is appropriate or necessary. The People assert that if, as can be expected under *Engstrom,* defendants routinely request any "rap sheets" of prosecution witnesses, the burden on the bureau would be enormous. In support of their assertion the *People point to a declaration by the bureau chief.*[8] Although that declaration is not persuasive as to the number of searches for "rap sheets" that would be required if *Engstrom* is followed without exception, it is clear that the burden on the bureau could be immense if defendants charged with a felony are entitled upon request to any felony conviction records of persons the prosecution plans to call as witnesses at trial.[9] Moreover, the denial of such a record in some instances would not deprive an accused of a fair trial. Prosecution witnesses include persons who will testify to facts about which it appears there will be no dispute or which have only minimum significance in the case.

■ Rather than formulate a fixed rule as was done in *Engstrom* we believe that discretion should reside in the trial judge to determine whether to grant a motion for discovery of felony convictions in a "rap sheet" of a prosecution witness.[10] Insofar as *Engstrom* is inconsistent with the views set forth herein, it is disapproved.

---

[8]That declaration stated that the bureau chief has been advised by the Attorney General's office that about "400,000 criminal proceedings are initiated" annually in California and that each "might" average 10 prospective prosecution witnesses and that assuming that (1) the foregoing figures are correct and (2) *Engstrom* is followed without exception, the bureau would be required to conduct four million searches annually and the workload would exceed the bureau's capacity. However, even if the matters assumed were correct, the declaration is not persuasive as to the number of searches that would be required since, among other things, in many cases guilty pleas may be entered or the proceeding dismissed under Penal Code section 995 without any request having been made for felony conviction records of prosecution witnesses.

[9]For example, in 1970-1971 there were 125,446 California municipal court felony preliminary filings and 76,426 California superior court criminal filings. (See 1972 Judicial Council Report, pp. 106 and 118.) And if a defendant charged with a felony is entitled to such records, others, such as minors in juvenile court proceedings, may be entitled to them. (See *Joe Z.* v. *Superior Court, supra,* 3 Cal.3d 797, 801-802.) In 1970-1971 there were 56,338 California superior court juvenile delinquency filings. (See 1972 Judicial Council Report, p. 104.) An affidavit by the lieutenant in charge of trial liaison section, bureau of investigation, office of the Los Angeles District Attorney, stated, inter alia, that their records indicate that over the past year an average of six subpoenas per case were served apparently on prosecution witnesses.

[10]*Wardius* v. *Oregon,* 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], is not contrary to our above stated belief. In *Wardius* a defendant was prevented from introduc-

In determining whether to grant a motion for discovery the trial court may consider, inter alia, the timeliness of the motion.  Although in general motions for discovery may be made either at or before trial (see *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 705 et seq.; *People* v. *Riser, supra,* 47 Cal.2d 566, 584-588; *People* v. *Renchie,* 201 Cal.App.2d 1, 4-5 [19 Cal.Rptr. 734]), a motion for discovery of felony conviction records in the possession of the bureau, if made at trial, in many cases might delay the trial if the motion were granted. Such a motion ordinarily should be made at a time when it would not have that effect.

In the instant case respondent court exceeded its discretion in denying discovery of any felony convictions in the "rap sheet" of Sillence, if it exists. As we have seen, good cause was shown for such discovery, and it does not appear that discovery will unduly hamper the prosecution or violate some other legitimate governmental interest. Although the People argue that the *Engstrom* rule violates that interest by imposing too great a burden on the bureau, they do not, and could not properly, argue that requiring discovery of a felony conviction record of a prosecution witness on a showing of good cause violates that interest. No claim is made that the motion here was untimely. If the prosecution has, or obtains, Sillence's "rap sheet," if it exists, only the record of felony convictions need be disclosed.

The People also assert that "if discovery is to be made of a felony conviction record of a prosecution witness, any request to such witness for necessary information and fingerprints should be made pursuant to an order of the trial court" because the prosecution's relations with that witness would be jeopardized if it were required to make such a request without such an order. Statements in the bureau's chief declaration pertain to this assertion.[11] The record does not show what the prosecution submits to the

---

ing any evidence to support his alibi defense as a sanction for his failure to comply with a notice of alibi rule which on its face made no provision for reciprocal discovery, and the United States Supreme Court held (at p. 472 [37 L.Ed.2d at p. 86]) that "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Wardius* also noted that "the State's inherent information gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." (*Id.,* at p. 475, fn. 9 [37 L.Ed.2d at p. 88].) *Wardius,* however, did not state that due process requires that the defense be given access to all information to which the prosecution has access (e.g., "rap sheets" of witnesses).

[11]The declaration stated that "we require the submission of a fingerprint card if the request for 'rap sheet' information is made for use in a judicial proceeding. Only in unusual situations do we waive this requirement"; that a request submitted under the person's name alone is unreliable; and that with the submission of additional data (e.g., birth date, physical description, social security number) the accuracy of a tentative name identification increases.

bureau when it requests a "rap sheet" of a defense witness. If all the prosecution submits is the name and physical description of the person, that should suffice when the prosecution requests a "rap sheet" regarding one of its owns witnesses. The instant assertion was not made in respondent court and can be considered by that court hereafter.[12]

### The Arrest and Detention Records, i.e., "Rap Sheet," if Any, of Sillence

Sillence's "rap sheet," if it exists, might contain information regarding arrests or detentions for prior burglaries or attempted burglaries, and such information conceivably might lead to the discovery of evidence of prior offenses by Sillence having a distinctive modus operandi common to both the prior offenses and the offense with which petitioner is charged. Even if it be assumed that such evidence would be admissible as tending to show that Sillence committed the instant offense, a matter that might affect his credibility by showing he had a motive to lie, it does not follow that respondent erred in denying discovery of the arrest and detention records, if any.

The mere fact that the public defender's declaration alleged that it was necessary those records be made available to him and petitioner so that they may properly prepare for trial does not show respondent erred in denying discovery. ■ In view of the minimal showing of the worth of the information sought and the fact that requiring discovery on the basis of such a showing could deter eyewitnesses from reporting crimes, we are satisfied that respondent did not abuse its discretion in denying discovery of those records, if they exist. Before ruling, respondent inquired whether there were any facts in petitioner's declaration indicating that Sillence "may have been involved" other than his claiming to have been an eyewitness, and the public defender replied, "No . . . ." The public defender also advised the court that Sillence was the one who "initially called the police" apparently regarding the crime charged against petitioner. Even if Sillence committed prior offenses having a distinctive modus operandi common to both the prior offenses and the offense charged, that fact, together with his calling the police and claiming to have been an eyewitness to the offense charged would not, without more, warrant a reasonable belief that Sillence committed that offense and therefore had an interest in the case which

---

[12]The People also assert that any request to the bureau for a "rap sheet" should be by the court "because it relieves the parties of the hazard of prejudicing potential witnesses . . .," and the People note that under Penal Code section 11105 a court may request a "rap sheet." However, if the prosecution can obtain from the bureau the "rap sheet" of an individual by requesting it and furnishing only his name and physical description, there is no basis for believing the prosecution will be prejudiced by making the request, and so far as appears that is the situation here.

might affect his credibility. Those facts at best would raise only a suspicion that Sillence might have committed the instant offense. And in the words of respondent court, "it seems . . . that what [the public defender is] suggesting [i.e., allowing discovery of Sillence's arrest and detention records, if any] would have an awesome effect on people reporting crime."

*Engstrom* v. *Superior Court, supra,* 20 Cal.App.3d 240, cited by petitioner in support of his request for discovery of Sillence's arrest and detention records, differs from the instant case. There the petitioner, who was charged with murder and assault, sought discovery of, inter alia, the arrest records of the victims that related to any act of violence to prove that the victims initiated the attacks. An affidavit in support of the discovery motion alleged in part that "petitioner will raise the defense of self-defense," and the affidavit set forth petitioner's version of the facts related to the police, which version was in accord with his intended defense. *Engstrom,* after noting that specific acts of aggression by the victim may be admissible to show that the victim was the aggressor (see Evid. Code, § 1103), held that (p. 245), "where a claim of self-defense is offered, and the alleged victim of an offense is claimed to have been the aggressor, information concerning arrests for specific acts of aggression by the alleged victim must be produced if available to the prosecutor." The instant case manifestly does not come within the specific holding of *Engstrom*—petitioner has not claimed self-defense and Sillence is not a victim. Moreover, in *Engstrom* other evidence that the victims were the aggressors (i.e., the defendant's testimony) presumably was available, and it is unlikely that requiring disclosure of the records of the victims would have any significant effect on the reporting of crimes.

Petitioner also cites *In re Ferguson,* 5 Cal.3d 525, 531 [96 Cal.Rptr. 594, 487 P.2d 1234], wherein we held that the intentional suppression by the prosecutor of information in an alleged victim's "rap sheet" deprived the defendant of a fair trial under the circumstances there appearing, but the circumstances of that case are totally dissimilar to the ones here appearing.

Let a writ of mandate issue directing respondent to set aside its order denying discovery and to grant discovery in accordance with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan J., and Clark, J., concurred.